## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-02501-SBP

VINCENT LEMUS-MORALES,

     Plaintiff,

v.

UNITED STATES OF AMERICA,
FEDERAL BUREAU OF PRISONS,
NURSE LINDSAY,
DR. MCGAUGH, and
JOHN AND JANE DOES, R&D Correctional Officers,

     Defendants.

---

## ORDER ON MOTIONS TO DISMISS

---

**Susan Prose, United States Magistrate Judge**

Plaintiff Vincent Lemus-Morales ("Plaintiff"), a former federal inmate who is proceeding pro se, brings claims against the United States of America, the Federal Bureau of Prisons ("BOP"), Dr. McGaugh, and Nurse Lindsay (collectively, "Defendants"). The matter is before the court on two motions to dismiss: Defendants' Motion to Dismiss Second Amended Complaint Pursuant to Rules 12(b)(1) and (12)(b)(6), ECF No. 56 ("First Motion" or "First Motion to Dismiss"), and Defendants' Motion Under Rule 12(b)(1) to Dismiss Injunctive-Relief Claim in Plaintiff's Second Amended Complaint Based on Mootness, ECF No. 63 ("Second Motion" or "Second Motion to Dismiss"). Plaintiff filed a letter entitled "To show cause of violation of the Eight[h] Amendment," which the court construes as a response to the First Motion. ECF No. 58 ("Response"). Plaintiff did not respond to the Second Motion.

This court presides fully over this matter pursuant to 28 U.S.C. § 636(c), the unanimous consent of the parties (ECF No. 45), and the order of reference dated February 21, 2024 (ECF No. 47). The court has carefully considered the Motions to Dismiss and the applicable case law and finds that oral argument would not materially assist in the disposition of the Motions. For the reasons set forth below, the court respectfully **GRANTS** the Motions to Dismiss.

## BACKGROUND

The court takes as true the following facts from Plaintiff's Second Amended Complaint, ECF No. 29 ("Complaint" or "Compl."), the operative complaint in this matter, for purposes of the Motions to Dismiss.

On September 28, 2020, Plaintiff—who was then in federal custody—was confined in a holding cell in the Special Housing Unit of the Federal Correctional Institution in Florence, Colorado ("FCI Florence"), while awaiting placement in the Special Housing Unit at the United States Penitentiary in Florence. *Id.* at 5. While he was in the holding cell, Plaintiff was assaulted by one inmate for "a minute or more" before he was able to escape, at which point a second inmate began to assault him in an attack of approximately one minute in duration. *Id.* Plaintiff attributes these assaults to the fact that he was "a known drop-out [of a gang] undergoing the process of debriefing," and at least one of his assailants was an active member of the same gang. *Id.*

After the assault, Plaintiff was taken to the medical department, where he was examined by Nurse Lindsay. *Id.* Plaintiff, who had blood on his face and jumpsuit, told Nurse Lindsay that he had a lump on the side of his head, was dizzy, could not hear, and could feel liquid "running down from inside my ear due to the assault." *Id.* He also told Nurse Lindsay that he had

previously suffered a gunshot to the head "and that subsequent injury could kill me." *Id.* Nurse Lindsay looked in his ear and said that it was "just earwax." *Id.* She put some glue on a cut and told Plaintiff that he would be fine. *Id.* While he was still in the medical department, Plaintiff spoke with an "SIS Officer" named Rios,"[1] who told Plaintiff that he should never have been placed in the holding cell with the two inmates who assaulted him and that all three of them should have been handcuffed at the time of the assault. *Id.*

The next morning, after Plaintiff had been transferred to the Special Housing Unit at the United States Penitentiary, Nurse Lindsay came to administer "pill call." *Id.* at 6. Plaintiff told her he was still bleeding from his ear, that he was too dizzy to stand, and that he thought he had a concussion. *Id.* Nurse Lindsay reiterated that he was fine and said that she would bring him some Tylenol. *Id.* Soon after this second encounter with Nurse Lindsay, Plaintiff "fell unconscious and remained sleeping for nearly three full days," awakening at various points feeling dizzy and lightheaded. *Id.* Plaintiff makes no specific allegations about Dr. McGaugh and his purported involvement in Plaintiff's care.

From September 28, 2020, through November 12, 2020, no one from the prison medical department checked on Plaintiff, even though he had "submitted several copouts requesting medical attention and review." *Id.* Plaintiff claims to suffer long-term consequences from the assault. He has "lost the majority of the hearing in [his] right ear," which often drains "brown liquid" for weeks at a time and causes him to feel dizzy and lightheaded. *Id.* He continues to believe that he suffered a concussion. *Id.* He experiences nervousness and forgetfulness and has

---

[1] The court takes notice that "SIS," in BOP parlance, stands for "Special Investigative Services." *See, e.g.*, *United States v. Shields*, 774 F. App'x 434, 435 (10th Cir. 2019).

"lost trust and confidence" in others. *Id.*

At some point after the assault, Plaintiff was transferred to the Federal Correctional Institution in Otisville, New York, where he was incarcerated when he filed his initial complaint in this matter on August 17, 2022. ECF No. 1 at 2. The case was transferred to this District on September 19, 2022, at which point Plaintiff was housed at the Federal Correctional Institution in Fairton, New Jersey. ECF No. 5 at 1. Plaintiff was released from federal custody on or about August 9, 2024. ECF No. 62 (notice of Plaintiff's change of address to Winn Correctional Center, a state prison in Winnfield, Louisiana); *see also* BOP Inmate Locator, available at https://www.bop.gov/inmateloc/?os=vb.&ref-app, last visited March 28, 2025 (stating that Vincent Lemus-Morales was "not in BOP custody as of 08/09/2024").[2] On December 5, 2024, Plaintiff confirmed that he has a new address at a private home in Victorville, California. ECF No. 65 (notice of Plaintiff's change of address).

In this lawsuit, Plaintiff brings a claim for negligence against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680; a claim for prospective injunctive relief against the BOP based on an alleged violation of the Eighth Amendment in failing to provide medical treatment; and Eighth Amendment claims for monetary relief pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), against Nurse Lindsay and Dr. McGaugh. *See* Compl. at 5; *see also* ECF No. 34 at 7 (recommending that these

---

[2] The court may take judicial notice of the contents of this website. *See, e.g.*, *N.M. ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 702 n.22 (10th Cir. 2009) (taking judicial notice of information on "[t]he websites of two federal agencies"); *United States v. Robles-Ortega*, 336 F. App'x 824, 825 n.1 (10th Cir. 2009) ("We take judicial notice of this information regarding Mr. Robles's release that is available to the public on the Bureau of Prisons' Inmate Locator Service.") (citations omitted).

claims be permitted to proceed following initial screening pursuant to D.C.COLO.LCivR 8.1); ECF No. 38 (order adopting recommendation).[3] For relief, Plaintiff seeks damages of ten million dollars, "ongoing medical treatment, and immediate release for pain and suffering, serious physical injury, loss of memory, and traumatic depression from the brutal assault that occurred." Compl. at 8.

## LEGAL STANDARDS

### I.     Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) provides that a complaint may be dismissed for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), and the burden of establishing federal jurisdiction falls on the party invoking it. *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005).

Attacks on subject matter jurisdiction may take two different forms—a facial attack or a factual attack—which implicate different analytical frameworks. The United States Court of Appeals for the Tenth Circuit has explained:

> First, a party may make a facial challenge to the plaintiff's allegations concerning subject matter jurisdiction, thereby questioning the sufficiency of the complaint. In addressing a facial attack, the district court must accept the allegations in the complaint as true. Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.

---

[3] During the initial screening phase, the court dismissed the Eighth Amendment failure-to-protect claims asserted against Defendant John and Jane Doe R&D Correctional Officers for lack of a *Bivens* remedy. ECF No. 38 at 3; *see also* ECF No. 34 at 6-7 (explaining, in recommending dismissal of the *Bivens* failure-to-protect claim, that the claim was not cognizable after the decisions in *Egbert v. Boule*, 596 U.S. 482 (2022), and *Silva v. United States*, 45 F.4th 1134 (10th Cir. 2022) (collecting additional cases)).

> In addressing a factual attack, the court does not presume the truthfulness of the complaint's factual allegations, but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).

*United States v. Rodriquez Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001) (quotation omitted).

Here, Defendants make a factual attack on this court's jurisdiction to entertain Plaintiff's FTCA claim against the United States and his injunctive-relief claim against the BOP. But "neither party argues that this case should [be] resolved under a summary-judgment analysis," nor does Plaintiff dispute the factual assertions in the documents the United States submitted in support of its factual challenge under Rule 12(b)(1). *Clark v. United States*, 695 F. App'x 378, 382 n.2 (10th Cir. 2017) The court therefore concludes that it may rule on the motion to dismiss without converting it to a motion for summary judgment. *See id.* (finding conversion improper where the parties failed to "point to specific disputes of material fact involving merits issues that require resolution under a summary-judgment analysis"); *see also Lopez v. United States*, 376 F.3d 1055, 1061 (10th Cir. 2004) (finding conversion unwarranted where "[t]he specific facts alleged to be in dispute by the plaintiffs" were "immaterial to the applicability of the discretionary function exception"). And because there are no disputed jurisdictional facts, the court finds an evidentiary hearing unnecessary.

## II.   Federal Rule of Civil Procedure Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.*; *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claims "across the line from conceivable to plausible") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court should then identify the well-pleaded factual allegations and "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

In applying these pleading standards, this court is mindful that Plaintiff proceeds pro se and thus affords his filings a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). But the court cannot and does not act as his advocate, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), and applies the same procedural rules and substantive law to him as to a represented party. *See Murray v. City of Tahlequah, Okla.*, 312 F.3d 1196, 1199 n.3 (10th Cir. 2002); *see also Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008) ("*Pro se* status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure.") (quotation omitted). This court "cannot take on the responsibility of serving as [his] attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

## ANALYSIS

I.      **FTCA Claims**

      A.      **Failure to Protect: Discretionary Function Exception**

Plaintiff asserts that the BOP acted negligently in failing to protect him from assault by placing him in a holding cell at FCI Florence, when he was uncuffed, with two other inmates. Compl. at 5. The United States argues that this claim is barred by the discretionary function exception to the FTCA and must be dismissed for lack of subject matter jurisdiction. First Motion at 6-14. The court respectfully agrees.

As a general rule, suits against the United States are barred by sovereign immunity. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994). In the FTCA, however, the government has waived sovereign immunity "for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). But there are exceptions to this waiver.

> By statute, the FTCA does not apply to
>
> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). This discretionary function exception to the FTCA waiver reflects "Congress' desire to prevent judicial second-guessing of legislative and administrative decisions

grounded in social, economic, and political policy through the medium of an action in tort." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988) (quotation omitted).

Courts employ a two-step inquiry to determine whether a plaintiff's claim is barred by the discretionary function exception. First, a court must "consider whether the action is a matter of choice for the acting employee." *Id.* at 536. "[C]onduct cannot be discretionary unless it involves an element of judgment or choice. *Id.* (citation omitted). An act is deemed to be discretionary if no "'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (quoting *Berkovitz*, 486 U.S. at 537). The burden "to present evidence of a discretion-constraining regulation or policy resides with the plaintiff[]." *Sydnes v. United States*, 523 F.3d 1179, 1185 (10th Cir. 2008) (citing *Aragon v. United States*, 146 F.3d 819, 823 (10th Cir. 1998) ("The discretionary function exception poses a jurisdictional prerequisite to suit, which the plaintiff must ultimately meet as part of his overall burden to establish subject matter jurisdiction.") (internal quotations omitted)).

At the second step of the discretionary function analysis, the court must determine whether the conduct is "susceptible to policy analysis." *Gaubert*, 499 U.S. at 325. The focus is on the type of discretionary decision at issue; "it is unnecessary for government employees to make an actual 'conscious decision' regarding policy factors." *Kiehn v. United States*, 984 F.2d 1100, 1105 (10th Cir. 1993) (quoting *Johnson v. United States, Dep't of Interior*, 949 F.2d 332, 339 (10th Cir. 1991) ("The discretionary function exception may apply in the absence of a conscious decision, so long as the Park Service's search and rescue program allowed room for the rangers to make independent policy judgments.")). "For a complaint to survive a motion to

dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime. The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 324-25.

### 1.    First Prong: Matter of Choice

The court finds that the first prong of the discretionary function exception is satisfied in this case.

"Although the placement of inmates is guided by a statutory framework, that statutory framework does not 'specifically prescribe [ ]' or mandate 'a course of action for an employee to follow.'" *Threadgill v. United States*, No. 11-cv-00094-REB-KMT, 2011 WL 7429424, at *3 (D. Colo. Dec. 1, 2011) (alteration in original; quoting *Berkowitz*, 486 U.S. at 536), *recommendation adopted*, 2012 WL 638793 (D. Colo. Feb. 28, 2012). Here, Plaintiff identifies no discretion-constraining regulation or policy concerning the BOP's placement decision. *See* ECF No. 58 at 1 (with regard to the failure-to-protect claim, asserting that Plaintiff "was put into a cell with active gang members after being a drop out" and that "correctional officers were aware of my status," but identifying no regulation or policy that would have constrained discretion to make these judgment calls). The court respectfully agrees with the United States that there are no pertinent statutes or regulations that would have compelled BOP officials to take particular actions under the circumstances about which Plaintiff complains. *See* First Motion at 7-11.

First, 18 U.S.C. § 4042—which sets forth guidelines for the management and care of prisoners—does not mandate a specific course of conduct. In pertinent part, § 4042 provides:

> The Bureau of Prisons, under the direction of the Attorney General, shall—
> (1) have charge of the management and regulation of all Federal penal and correctional institutions;
> (2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise; [and]
> (3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States.

18 U.S.C. § 4042(a)(1)-(3). Although the statute uses the word "shall," the BOP nevertheless "retains discretion regarding the implementation of those mandates." *Rich v. United States*, 811 F.3d 140, 145 (4th Cir. 2015) (citing *Cohen v. United States*, 151 F.3d 1338, 1342 (11th Cir. 1998) ("[E]ven if § 4042 imposes on the BOP a general duty of care to safeguard prisoners, the BOP retains sufficient discretion in the means it may use to fulfill that duty to trigger the discretionary function exception.")); *see also, e.g.*, *Calderon v. United States*, 123 F.3d 947, 950 (7th Cir. 1997) (§ 4042(a) "sets forth no particular conduct the BOP personnel should engage in or avoid while attempting to fulfill their duty to protect inmates"); *Donaldson v. United States*, 281 F. App'x 75, 77 (3d Cir. 2008) (holding that "[t]he District Court correctly determined that this statute leaves the implementation of these duties to the discretion of BOP officials"); *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) ("[D]ecisions with regard to classification of prisoners, assignment to particular institutions or units, and allocation of guards and other correctional staff must be viewed as falling within the discretionary function exception to the FTCA, if penal institutions are to have the flexibility to operate.").

Put simply, "BOP officials *are given no guidance, and thus have discretion*, in deciding how to accomplish these [§ 4042(a)] objectives." *Montez ex rel. Est. of Hearlson v. United States*, 359 F.3d 392, 396 (6th Cir. 2004) (emphasis added). In light of this weight of authority,

the court finds that § 4042 does not preclude discretion in the decisions of BOP officials regarding placement and separation of federal inmates. And this discretion is further "evident in the regulations regarding the proper handling and review of the Central Inmate Monitoring (CIM) files." *Rich*, 811 F.3d at 145; *see also* First Motion at 8-9 (discussing regulations governing classification of inmates).

The United States explains that "[r]egulations implementing § 4042(a) established BOP's Central Inmate Monitoring"—or "CIM"—system. First Motion at 8 (referencing 28 C.F.R. §§ 524.70-76). By means of the CIM system, the BOP monitors and controls "activities of certain inmates who present special needs for management." Declaration of Case Management Coordinator Sarah Otto, ECF No. 56-1 ¶ 7 (citing 28 C.F.R. § 524.70); *see also Rich*, 811 F.3d at 145 ("The CIM system is the mechanism by which the Bureau of Prisons monitors and controls the transfer, temporary release, and community activities of certain inmates who present special needs for management, including the need to separate certain inmates from others based on their past behavior."). Under the CIM regulations, the BOP considers several factors when deciding whether to issue a "separation" classification, including "testimony provided by or about an individual (in open court, to a grand jury, etc.), and whether the inmate has exhibited aggressive or intimidating behavior towards other specific individuals, either in the community or within the institution." 28 C.F.R. § 524.72(f). Inmates may also be removed from the general inmate population and placed in administrative detention status "when necessary to ensure the safety, security, and orderly operation of correctional facilities," 28 C.F.R. § 541.22(a), and such separation "may" occur when the inmate has requested separation "for [his] own protection" or when BOP officials determine that there is a need for protection. *Id.* § 541.23(c)(3).

Like § 4042, these regulations impose no strictures on discretion in the placement of inmates. "[N]othing in [§ 524.72(d)] requires that any specific action be taken by the various prison officials. Instead, prison officials must consider several factors and exercise independent judgment in determining whether inmates may require separation." *Rich*, 811 F.3d at 145 (citing § 524.72(f)). And "[g]iven this general language in the regulations, . . . prison officials exercise broad discretion in this regard," thus satisfying the first prong of the discretionary function exception. *Id.* Here, Plaintiff does not allege any formal CIM status that would have required him to be separated from the inmates who allegedly attacked him, or that otherwise would have cabined the officials' discretion in deciding where, and with whom, to house him. To the contrary, Plaintiff reported to the CIM-certified staff member who conducted his intake screening at FCI Florence that he was a member of a gang, but that "he did not know of any reason that he should not be placed in general population, he has not assisted law enforcement agents in any way, [and] he has not testified against anyone in court . . . ." *See* Otto Decl. ¶ 18(c).

Based on the information Plaintiff provided to the BOP—including that "he did not report to staff that he was aware of any potential risks in the institution"—and because he "did not have a separation status from" any inmate listed at FCI Florence, *id.* ¶ 19, BOP officials exercised their discretion to place him in that institution with the two inmates who allegedly attacked him. *Cf. Cohen*, 151 F.3d at 1344-45 (discretionary function exception provides "no shelter from liability" when prison officials disregard a formal separation order) (quoting *Gaubert*, 499 U.S. at 324). These decisions regarding placement and separation, grounded as they are on "independent judgment" calls, satisfy "the first prong of the discretionary function exception. *Rich*, 811 F.3d at 145; *accord, e.g.*, *Petrovic v. United States*, No. 5:16-CT-3312-BO,

2018 WL 9457987, at *9 (E.D.N.C. Sept. 12, 2018) (recognizing that "[c]ourts have routinely held that decisions regarding inmate placement and classification fall within the discretionary function exception to the FTCA") (citing *Santana-Rosa*, 335 F.3d at 44; *Little v. United States*, No. 5:11CV41, 2014 WL 4102377, at *6 (N.D. W. Va. Aug. 18, 2014); *Hernandez v. United States*, No. 1:12-cv-647, 2013 WL 5508010, at *9 (M.D. Penn. June 18, 2013) ("BOP's actions in transferring, classifying, and placing prisoners in particular institutions are acts that come within the discretionary function exception"), *recommendation adopted*, 2013 WL 5288271 (M.D. Pa. Sept. 18, 2013), *aff'd*, 608 F. App'x 105 (3d Cir. 2015); *Zander v. United States*, No. 1:12CV700, 2016 WL 1312029, at *7 (M.D.N.C. Mar. 31, 2016), *aff'd*, 671 F. App'x 80 (4th Cir. 2016)).

Similarly discretionary was the decision to place Plaintiff in the holding cell *without* handcuffs. Compl. at 5 (Plaintiff was "uncuffed" in the holding cell at the time of the alleged assault). Plaintiff points to no regulations or policies requiring that inmates remain handcuffed while confined in a holding cell during the transfer process, and no such mandate appears in BOP regulations governing the use of force and application of restraints. *See* 28 C.F.R. §§ 552.20 *et seq.* As court have recognized, these regulations allow the BOP staff member to use discretion in deciding whether and how to apply restraints. *See, e.g.*, *Abdo v. United States*, No. 22-cv-03110-CNS-NRN, 2023 WL 10366014, at *6 (D. Colo. Dec. 5, 2023) (recognizing that "the pertinent question" in examining BOP restraint policies "is whether the relevant statutes, regulations, and/or policies afford BOP staff with discretion, and each of these regulations affords the government actor with some level of discretion. Accordingly, *Berkovitz* prong one is satisfied."), *recommendation adopted*, 2024 WL 1073214 (D. Colo. Mar. 12, 2024);

*see also, e.g.*, *Hatten v. Bledsoe*, 782 F. App'x 91, 96 (3d Cir. 2019) ("[T]he relevant statute and regulations here afford the BOP discretion in deciding how to best protect and restrain inmates, and the judgment involved is the type of judgment that the exception was designed to shield. Thus, Hatten's FTCA claims are barred by the discretionary-function exception."); *Hurt v. Dep't of Just.*, No. 2:22-cv-00048-JJV, 2023 WL 2989982, at *3 (E.D. Ark. Apr. 18, 2023) (finding that "the discretionary function exception applies to the transporting officers' decision to use standard restraints on Plaintiff's ankles and wrists, rather than the zip-ties and 'big-man cuffs' requested by Plaintiff," and that "[t]his evidence suggests that, rather than being mandated by a federal regulation[] or statutes, the officers must use their discretion, choice, and judgment when deciding how prisoners should be restrained during transportation"); *Warren v. United States*, 244 F. Supp. 3d 1173, 1240 (D.N.M. 2017) (finding no regulation or policy governing application of restraints in a BOP holding cell that "makes the application of such restraints nondiscretionary"); *Peraza v. United States*, No. 3:CV-15-1224, 2017 WL 1150662, at *6 (M.D. Pa. Mar. 28, 2017) ("There is no indication that there was a specific federal statute or regulation or policy which required the USP-Lewisburg correctional staff to take a particular course of action regarding their decisionmaking as to whether or when to apply restraints to Peraza.").

In summary, 18 U.S.C. § 4042 and its implementing regulations afford the BOP discretion concerning the decision to place Plaintiff in a Special Housing Unit holding cell during his transfer process, and to place him "uncuffed" in that holding cell with other inmates not ordered to be separated from him. Accordingly, the first prong of the discretionary function exception is satisfied.[4]

---

[4] Plaintiff alleges that an officer named Rios told him that he "should have never placed me in

## 2.    Second Prong: Susceptible to Policy Analysis

The court also finds that the second prong of the discretionary function exception is satisfied because deciding how to classify and place inmates—and determining the manner in which to restrain or not restrain them—is clearly susceptible to policy analysis. *Gaubert*, 499 U.S. at 325.

There is no applicable statute, regulation or policy establishing a required course of conduct for these matters, and so the court is obliged to "*presume* that a government agency's acts are grounded in policy." *Ball v. United States*, 967 F.3d 1072, 1079 (10th Cir. 2020) (citing *Gaubert*, 499 U.S. at 324-25) (emphasis in original). "[I]nmate placement[] decisions, even those that ultimately lead to injury, routinely have been found to satisfy this second discretionary function[] prong due to the myriad of policy considerations at issue." *Threadgill*, 2011 WL 7429424, at *4 (citing *Cohen*, 151 F.3d at 1344) (discretionary function exception barred FTCA claim involving assault from negligent classification); *Morales v. United States*, 371 F. App'x 528, 533 (5th Cir. 2010) (BOP's placement of prisoner triggers discretionary function exception); *Enlow v. United States*, 161 F. App'x 837, 839-40 (11th Cir. 2006) (same); *Muick v. Reno*, 83 F. App'x 851, 853 (8th Cir. 2003) (FTCA claim arising from inmate attack barred by discretionary function exception based on BOP's "staffing, classification and placement of

_____

the holding cell" with the inmates who allegedly assaulted him. Compl. at 5. Assuming the veracity of that allegation, one officer's opinion does not negate the operation of the discretionary function exception. That opinion plainly does not constitute a formal discretion-constraining policy or directive adopted by the BOP. Regardless, "[b]ecause the exception applies whether or not the discretion involved was abused, it is irrelevant whether the government employees were negligent." *Awad v. United States*, 807 F. App'x 876, 879 (10th Cir. 2020) (quotation omitted).

inmates")); *see also, e.g.*, *Saleh v. United States*, No. 09-cv-02563-PAB-KLM, 2011 WL 2682728, at *2 (D. Colo. July 8, 2011) (holding that the decision to place an inmate in a transition unit in the prison's step-down program "require[d] the BOP officials involved to exercise their judgment and that such judgments are susceptible to a policy analysis"); *Huff v. Neal*, 555 F. App'x 289, 298 (5th Cir. 2014) (holding that "the placement of any inmates on any occasion . . . inherently requires that prison officials exercise their discretion to make a choice regarding the proper course of action in furtherance of safekeeping"); *Rich*, 811 F.3d at 145 (recognizing that "prisoner placement and the handling of threats posed by inmates against one another are 'part and parcel of the inherently policy-laden endeavor of maintaining order and preserving security within our nation's prisons'") (quoting *Cohen*, 151 F.3d at 1344).

The many factors that come into play in deciding how to classify and place inmates "are inherently grounded in social, political and economic policy." *Dykstra v. U.S. Bureau of Prisons*, 140 F.3d 791, 796 (8th Cir. 1998). So, too, are decisions concerning the utilization of restraints. *Abdo*, 2023 WL 10366014, at *7 (finding that assessment of an inmate's restraints by BOP officials was based on public policy considerations). Plaintiff has not alleged facts sufficient to overcome the strong presumption that decisions concerning his restraints were based on public policy considerations, and thus the court discerns no justification to intrude upon the "wide-ranging deference" accorded to prison officials "in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Dawson v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Colo.*, 732 F. App'x 624, 631 (10th Cir. 2018) (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).

At bottom, the decisions on which Plaintiff grounds his failure-to-protect claim—his

placement in a holding cell, unrestrained, with other inmates who were not ordered to be separated from him—"are precisely the kind of determinations that the discretionary function exception is intended to protect." *Rich*, 811 F.3d at 146. These determinations clearly fall with the discretionary function exception to the FTCA. Consequently, the United States is entitled to sovereign immunity on Plaintiff's failure-to-protect claim, requiring that the claim be dismissed without prejudice for lack of subject matter jurisdiction. *See, e.g.*, *Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 985 (10th Cir. 2019) (dismissal for lack of subject matter jurisdiction is generally without prejudice).

## B.    Medical Negligence: No Certificate of Review

The United States argues that Plaintiff's FTCA claim for medical negligence must be dismissed because Plaintiff failed to file a certificate of review. First Motion at 14-16. For the reasons that follow, the court agrees.

The FTCA permits suit against the United States only where it would be liable "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Under Colorado law, "[i]n every action for damages . . . based upon the alleged professional negligence of . . . a licensed professional," a litigant "shall file with the court a certificate of review . . . within sixty days after the service of the complaint[.]" Colo. Rev. Stat. § 13-20-602(1)(a). "[F]ailure to file a certificate of review . . . shall result in the dismissal of the complaint[.]" *Id.* § 13-20-602(4). The Tenth Circuit has made clear that that "Colorado's statutes pertaining to a certificate of review are 'applicable to professional negligence claims brought against the United States under the FTCA.'" *Noe v. United States Gov't*, No. 23-1025, 2023 WL

8868491, at *4 (10th Cir. Dec. 22, 2023) (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1117 (10th Cir. 2004)), *cert. denied sub nom. Noe v. Berkley*, 144 S. Ct. 2562 (2024).

In certain instances, a certificate of review is not required. "Colorado courts have long held that Colo. Rev. Stat. § 13-20-602 requires a plaintiff to file a Certificate only 'for any claim based on allegations of professional negligence *that requires expert testimony to establish a prima facie case.*'" *Coleman v. United States*, 803 F. App'x 209, 212 (10th Cir. 2020) (quoting *Martinez v. Badis*, 842 P.2d 245, 250 (Colo. 1992) (emphasis in original)); *see also Sherman v. Klenke*, 653 F. App'x 580, 595 (10th Cir. 2016) ("The certificate-of-review requirement therefore applies only if (1) the plaintiff brings a claim of alleged professional negligence against a licensed professional, *and* (2) expert testimony is necessary to substantiate the claim.") (emphasis in original). However, "[i]t is only in unusual circumstances that a medical malpractice claim can be proven without the presentation of expert medical opinion to establish the proper standard of care against which the professional's conduct is to be measured." *Shelton v. Penrose/St. Francis Healthcare Sys.*, 984 P.2d 623, 627 (Colo. 1999).

The court agrees with the United States that expert testimony—and, therefore, a certificate of review—are required to support Plaintiff's claim of medical negligence here. He asserts that Nurse Lindsay[5] denied him proper medical care for his injuries after the assault, resulting in long-term consequences in the form of partial hearing loss, dizziness, and lightheadedness. Compl. at 6. These allegations do not implicate "subject matter within the common knowledge or experience of an ordinary person." *See Williams v. Intervention, Inc.*,

---

[5] Recall that Plaintiff makes no specific allegations concerning Dr. McGaugh's involvement in any medical care or decision.

No. 23-cv-01201-NYW-STV, 2024 WL 1088359, at *8 (D. Colo. Feb. 20, 2024) (citation omitted). Plaintiff does not deny that Nurse Lindsay evaluated him in the aftermath of the assault—she looked in his ear, attributed his complaints to a build-up of earwax, and later brought him Tylenol to help control his pain—but he "believe[s]" he had a concussion that warranted a different course of care. Compl. at 6. Expert testimony is necessary for a factfinder to evaluate whether this alleged conduct implicates any negligence on the part of Nurse Lindsay. *See, e.g.*, *Curphey v. Wassell*, No. 21-cv-03433-NYW-JPO, 2024 WL 3759429, at *6 (D. Colo. Aug. 12, 2024) (concluding that "[t]he proper standard of care in diagnosing and treating shoulder injuries does not lie within the ambit of common knowledge or experience of ordinary persons," and that the plaintiff's failure to file a certificate of review barred him from pursuing a claim based on those allegations) (cleaned up); *Abdo v. Balsick*, No. 18-cv-01622-KMT, 2019 WL 6726230, at *13 (D. Colo. Dec. 11, 2019) (holding that expert testimony, and thus a certificate of review, were necessary to assess the merits of a medical negligence claim concerning an alleged failure to properly decontaminate an inmate after the utilization of pepper spray) (citing *Morales v. Rattan*, No. 17-cv-03009-PAB-KLM, 2019 WL 588192, at *5 (D. Colo. Feb. 13, 2019) (allegations that a physician misdiagnosed the plaintiff's foot condition and "failed to prevent the avoidable amputation of [his] toe" required expert testimony), *recommendation adopted*, 2019 WL 8275623 (D. Colo. Mar. 5, 2019); *Custard v. Balsick*, No. 15-cv-2221-REB-CBS, 2017 WL 131799, at *21 (D. Colo. Jan. 13, 2017) (allegations that a physician's assistant "should have immediately provided medical care instead of delaying or denying it" required expert testimony).

Accordingly, the court finds that expert testimony is required for Plaintiff to establish a

prima facie case of medical negligence and that he was obliged to comply with the Colorado statutory requirement to submit a certificate of review. Because he has not done so, his claim for medical negligence should be dismissed without prejudice. *See*, *e.g.*, *Coleman*, 803 F. App'x at 214 (noting that judges in this District have held that dismissals for failure to file a certificate of review "should be without prejudice unless (1) the failure to file a required certificate of review was the result of willful misconduct or gross negligence or (2) caused substantial prejudice," and directing that, on remand, the court should consider whether dismissal for failing to comply with the certificate requirement should be with or without prejudice) (citations omitted).

## II.    Claim for Prospective Injunctive Relief Against the BOP

Defendants argue that Plaintiff's Eighth Amendment claim seeking injunctive relief for future medical care from the BOP is moot because Plaintiff was released from BOP custody on August 9, 2024. Second Motion to Dismiss at 3-4. The court agrees that, given the changed circumstances, there is no jurisdiction to award Plaintiff this prospective relief.[6]

Under Article III of the United States Constitution, federal courts only have jurisdiction to hear certain "cases" and "controversies," *Susan B. Anthony List v. Driehaus*, 573 U.S. 149,

---

[6] The court may consider the mootness argument raised in the Second Motion to Dismiss and, indeed, could have addressed the point even if no party had raised it. As the Tenth Circuit recently has reiterated, "cases are legion that, '[w]hether or not raised by the parties, we are obligated to satisfy ourselves as to our own jurisdiction at every stage of the proceeding.'" *Fabrizius v. Dep't of Agric.*, 129 F.4th 1226, 1240 n.8 (10th Cir. 2025) (quoting *M.S.* v. *Premera Blue Cross*, 118 F.4th 1248, 1261 (10th Cir. 2024) (alteration in original) (quoting *Alexander* v. *Anheuser-Busch Cos., Inc.*, 990 F.2d 536, 538 (10th Cir. 1993)).

157 (2014), rendering them "duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *The Wilderness Soc. v. Kane Cnty.*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring).

Here, it is apparent that Plaintiff can pursue no case against the BOP. The BOP lacks control over Plaintiff and the terms of his confinement—and has lacked such control for many months—and so providing him the requested injunctive "relief [is] impossible." *Jordan v. Sosa*, 654 F.3d 1012, 1023 (10th Cir. 2011) (quotation omitted). Put another way, Plaintiff "no longer suffers [an] actual injury that can be redressed by a favorable judicial decision." *Brown v. Buhman*, 822 F.3d 1151, 1166 (10th Cir. 2016); *see also Ind v. Colo. Dep't of Corrs.*, 801 F.3d 1209, 1213 (10th Cir. 2015) ("[A] case becomes moot when a plaintiff no longer suffers actual injury that can be redressed by a favorable judicial decision.") (citation and internal quotation marks omitted). At this point, "an entry of equitable relief in [Plaintiff's] favor would amount to nothing more than a declaration that he was wronged, and would have no effect on the defendant's behavior towards him"—rendering his claim for injunctive relief constitutionally moot. *Jordan*, 654 F.3d at 1027-29 (cleaned up) (holding that inmate's claims were constitutionally moot where they related "solely to the conditions of confinement at the penal institution at which the prisoner was no longer incarcerated"); *accord, e.g.*, *Rahman v. Billingsly*, No. 21-cv-02625-KLM, 2023 WL 2018905, at *4 (D. Colo. Feb. 14, 2023) ("Plaintiff has already been released from [BOP] custody and is no longer incarcerated [by BOP]. Accordingly, the relief he requests . . . cannot be granted because there is no longer a live case or controversy presented to this Court."); *Patterson v. Santini*, No. 11-cv-01899-RM-KLM, 2016 WL 11642452, at *6 (D. Colo. Nov. 28, 2016) (finding that prisoner's claim seeking to compel

treatment of his medical conditions was rendered moot upon his release from BOP incarceration: "Because a prisoner's transfer or release signals the end of the alleged deprivation of his constitutional rights, an entry of equitable relief in his favor would amount to nothing more than a declaration that he was wronged, and would have no effect on the defendants' behavior towards him."); *Nasious v. Colorado*, 495 F. App'x 899, 903 (10th Cir. 2012) ("[I]t is well-settled that a prisoner's transfer out of a prison moots his requests for . . . injunctive relief against staff at that prison.") (citing *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010)).

"Under Article III, a federal court may resolve only 'a real controversy with real impact on real persons.'" *Valdez v. Grisham*, No. 22-2112, 2024 WL 2319752, at *3 (10th Cir. May 22, 2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021)). There is no such controversy here. Plaintiff no longer suffers an injury that the BOP allegedly caused for which this court can provide relief. He therefore lacks the "'requisite personal interest' such that this Court may exert Article III power over" his claim for injunctive relief. *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).

In short, Plaintiff's claim seeking injunctive relief against the BOP is moot, and he has failed to establish jurisdiction in this court to pursue that prospective relief.

## III.    Eighth Amendment Deliberate Indifference Claims Against Lindsay and McGaugh

The final category of claims that Plaintiff seeks to litigate are individual-capacity *Bivens* claims against Nurse Lindsay and Dr. McGaugh for deliberate indifference to his serious medical needs in violation of the Eighth Amendment. *See* Compl. at 5-6. These defendants argue that a *Bivens* claim is not cognizable in this context and, alternatively, that the claims cannot proceed because they are entitled to qualified immunity. First Motion to Dismiss at 18-21. Because the

court agrees that there is no *Bivens* remedy for the deliberate indifference claims that Plaintiff attempts to plead,[7] the court does not address the qualified immunity argument.

In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court recognized an implied cause of action for monetary damages directly under the Fourth Amendment to compensate persons injured by federal officers who violated the prohibition on unreasonable search and seizures. *Id.* at 397. Since *Bivens*, the Supreme Court has recognized a *Bivens* remedy in only two other cases: *Davis v. Passman*, 442 U.S. 228 (1979), in which the Court held that an employee who was fired by a Congressman because she was a woman had a damages remedy for a Fifth Amendment equal protection claim concerning gender discrimination, *id.* at 248-249, and *Carlson v. Green*, 446 U.S. 14 (1980), in which the Court held that the Cruel and Unusual Punishments Clause under the Eighth Amendment provided a damages remedy for the family of a federal prisoner who died after prison officials failed to treat his asthma. *Id.* at 19. "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017).

Since *Carlson*, the last of the trio of implied damages cases, the Supreme Court has changed its "approach to recognizing implied causes of action[.]" *Id.* At this point, as the Tenth

---

[7] Several recent recommendations and orders issued by judges in this District have assessed whether *Bivens* should be extended to medical deliberate indifference claims against federal officials, and have concluded that it should not. *See, e.g.*, *Singletary v. Conroy*, No. 24-cv-00145-NYW-KAS, 2025 WL 460924, at *6-8 (D. Colo. Feb. 11, 2025), *recommendation adopted*, 2025 WL 706003 (D. Colo. Mar. 5, 2025); *Ward v. McGaugh*, No. 23-cv-00233-NYW-MDB, 2025 WL 385593, at *3-5 (D. Colo. Feb. 4, 2025). The court's discussion here largely tracks the thorough and well-reasoned analyses of the *Bivens*-remedy issue in *Singletary* and *Conroy*.

Circuit has recently emphasized, "*Bivens* is now all but dead." *Rowland v. Matevousian*, 121 F.4th 1237, 1243 (10th Cir. 2024); *see also Logsdon v. United States Marshal Serv.*, 91 F.4th 1352, 1355 (10th Cir. 2024) (calling *Bivens* "a relic of the 20th century"). And in the more than fifty years since the Court decided *Bivens*, it has "progressively chipped away at the decision—to the point that very little of its original force remains." *Silva v. United States*, 45 F.4th 1134, 1139 (10th Cir. 2022); *see also Egbert v. Boule*, 596 U.S. 482, 491-93 (2022) (collecting cases where the Supreme Court has declined to extend *Bivens*). While not "dispens[ing] with *Bivens* altogether," the Supreme Court has made clear that recognizing a cause of action under *Bivens* is a "disfavored judicial activity." *Egbert*, 596 U.S. at 491. Similarly, the Tenth Circuit has said, "expanding *Bivens* is . . . an action that is impermissible in virtually all circumstances." *Silva*, 45 F.4th at 1140; *see id.* at 1136 (stating that "[t]he Supreme Court's message" is that "lower courts expand *Bivens* claims at their own peril").

In analyzing whether a *Bivens* remedy exists, courts apply a two-part test. *Rowland*, 121 F.4th at 1242-43. The first prong of the test asks the court to determine "whether the case presents a new *Bivens* context—i.e., is it meaningfully different from the three cases in which the Court has implied a damages action." *Egbert*, 596 U.S. at 483 (cleaned up). This prong requires a rigorous comparison of the proposed claim with the three existing *Bivens* scenarios: "[t]he [Supreme] Court has said in effect that almost any difference between the case at hand and the three Court precedents can justify rejecting a cause of action." *Logsdon*, 91 F.4th at 1355 (citing *Egbert*, 596 U.S. at 503). Second, if the case does arise in a new context, the court considers whether there are "special factors" indicating that Congress is in a better position "to weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 596 U.S. at 492 (quotation

omitted).

The two steps of the *Bivens* inquiry "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.* at 492; *see also id.* at 496 (if "there is *any* rational reason (even one) to think that *Congress* is better suited to weigh the costs and benefits of allowing a damages action to proceed," a court must refrain from creating such a remedy) (quotation omitted) (emphasis in original). Recently, the Tenth Circuit has explicitly stated that "Congress will *always* be better suited to make such a call" because "recognizing a *Bivens* action improperly merges the 'Constitution's separation of legislative and judicial power.'" *Rowland*, 121 F.4th at 1244 (quoting *Egbert*, 596 U.S. at 491) (emphasis added); *see also Egbert*, 596 U.S. at 504 (Gorsuch, J., concurring) (if "the only question is whether a court is 'better equipped' than Congress to weigh the value of a new cause of action, surely the right answer will always be no").

### A.    New Context

Of the three cases in which *Bivens* remedies have been approved, Plaintiff's deliberate indifference claim loosely resembles *Carlson*, but only insofar as *Carlson* involved allegations of deliberate indifference to an inmate's medical needs. Beyond that, no meaningful resemblance between *Carlson* and the instant matter can be discerned. *See Rowland*, 121 F.4th at 1242-43 ("Since his case also alleges deliberate indifference by prison officials in violation of the Eighth Amendment, Mr. Rowland claims his case breaks no new ground. But the similarities between Mr. Rowland's case and *Carlson* start and end there.").

In *Carlson*, the plaintiff alleged that:

• Prison officials acted *against* the doctor's orders by keeping the plaintiff in a medical facility that was known to be "gross[ly] inadequate";
• The prisoner did not receive "competent medical attention for some eight hours after he had an asthmatic attack";
• The prisoner was "[a]dministered contra-indicated drugs which made [the prisoner's] attack more severe";
• Prison officials attempted to use a respirator known to be inoperative which further impeded the prisoner's breathing; and
• The prisoner died as a result.

*Id.* at 1243 (quoting *Carlson*, 446 U.S. at 16 n.1) (cleaned up). Here, while the court does not intend to minimize the harm Plaintiff claims to have sustained, it must be acknowledged that it is of a significantly different nature from that in *Carlson*.

The court need find only "small" differences between the facts alleged and the facts in *Carlson* to "easily" determine that a complaint presents a new *Bivens* context, *Rowland*, 121 F.4th at 1243 (quoting *Ziglar*, 582 U.S. at 147), and differences of sufficient magnitude are readily apparent here. First, and most notably, the harm at issue in *Carlson* was death. Second, with regard to both Nurse Lindsay and Dr. McGaugh, there are no allegations that they acted contrary to doctor's orders, administered contraindicated drugs, or kept Plaintiff in a facility that was "grossly inadequate." And to the extent Nurse Lindsay disagreed with Plaintiff about the severity of his injury, or misjudged the situation after looking in his ear, these actions bear little similarity to the situation in *Carlson*, and so the court finds that Plaintiff's claims arise in a new *Bivens* context. *See, e.g.*, *Rowland*, 121 F.4th at 1243 (allegedly inadequate care for a BOP inmate's hernia arose in a new context distinct from *Carlson*); *Ward*, 2025 WL 385593, at *5 (deliberate indifference claim for delayed care for a burn arose in a new context); *Singletary*, 2025 WL 460924, at *1, 7 (finding a new context distinct from *Carlson* where a BOP inmate

complained of delayed treatment stemming from an allegedly botched tooth extraction); *Jones v. USA*, No. 22-cv-02854-PAB-MDB, 2024 WL 365003, at *5 (D. Colo. Jan. 3, 2024) (BOP's alleged mistreatment of an inmate's skin condition arose in a new context unlike *Carlson*), *recommendation adopted sub nom. Jones v. United States*, 2024 WL 358098 (D. Colo. Jan. 31, 2024).

### B.    Special Factors

Because Plaintiff's claim arises in a new context, the court must consider whether special factors counsel against recognizing a new *Bivens* claim. The court finds that there are such factors.

"[A] court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure." *Egbert*, 596 U.S. at 493 (quotation omitted). "If there are alternative remedial structures in place, that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* (quotation omitted). As the Tenth Circuit has observed, "here, there is such a scheme: the BOP's Administrative Remed[y] Program. The Administrative Remed[y] Program provides [the plaintiff] the means through which allegedly unconstitutional actions (in this case, inadequate medical care) can be brought to the attention of the BOP and prevented from recurring." *Rowland*, 121 F.4th at 1243-44 (internal quotation omitted); *see also Noe*, 2023 WL 8868491, at *3 (holding that an inmate's *Bivens* claim was not cognizable where the Administrative Remedy Program was available to address a BOP inmate's medical negligence claim: "Read together, *Egbert* and *Silva* direct that where the government has provided an alternative remedy, a court generally should not recognize a *Bivens* claim even if the factual

context is not meaningfully different from that in *Bivens*, *Davis*, or *Carlson*."). Here, Plaintiff does not dispute that the Administrative Remedy Program was available to him; in fact, he affirmatively acknowledged in his pleading that he exhausted his administrative remedies before bringing suit. Compl. at 5.

"Since [Plaintiff's] case presents a new *Bivens* context, and a remedial scheme already exists to address his complaint, [his] *Bivens* claim fails." *Rowland*, 121 F.4th at 1244. In addition, in declining to extend *Bivens* to this new context, the court acknowledges that Congress has elected not to create a damages remedy for prisoners seeking to sue individual workers employed by the Federal Bureau of Prisons. That is a judgment call Congress is undoubtedly better positioned to make than this court. *See, e.g.*, *Egbert*, 596 U.S. at 492.

In sum, because Plaintiff's claim presents a new *Bivens* context and an adequate remedy exists to address his complaint, he cannot pursue a claim for monetary damages against Nurse Lindsay and Dr. McGaugh. Therefore, his Eighth Amendment deliberate indifference claims against these defendants are dismissed with prejudice. *See, e.g.*, *Silva*, 45 F.4th at 1142 (affirming district court's dismissal of purported Eighth Amendment *Bivens* claim with prejudice).

## CONCLUSION

For the reasons explained above, it is respectfully **ORDERED** that:

(1) Defendants' First and Second Motions to Dismiss (ECF Nos. 56, 63) are **granted**;

(2) Plaintiff's claims brought under the Federal Tort Claims Act are **DISMISSED without prejudice**;

(3) Plaintiff's claims for prospective injunctive relief against the Federal Bureau of

29

Prisons are **DISMISSED without prejudice**; and

 (4) Plaintiff's *Bivens* claims against Defendants Lindsay and McGaugh are **DISMISSED with prejudice**.

 The Clerk's Office shall enter judgment in favor of Defendants on all claims in this action and close the case.

DATED: March 31, 2025     BY THE COURT:

             _____

             Susan Prose
             United States Magistrate Judge